## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD HOLLIHAN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT--CLASS ACTION** |
| PENNSYLVANIA DEPARTMENT OF | ) | |
| CORRECTIONS; JOHN WETZEL, | ) | |
| Secretary of the Pennsylvania | ) | Civil No. |
| Department of Corrections; BRYAN | ) | |
| HYDE, Correctional Health Care | ) | |
| Administrator; DR. RASHIDA | ) | |
| MAHMUD; DR. JOHN ROBINSON; | ) | |
| WEXFORD HEALTH SOURCES, | ) | |
| INC.; and DR. DONALD KERA. | ) | |
| | ) | |
| *Defendants.* | | |

## CLASS ACTION COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

### NATURE OF THE ACTION

1.     The Pennsylvania Department of Corrections, by policy and practice, systematically denies necessary medical care for inmates with serious eye conditions including severe cataracts, thereby condemning them to partial or total blindness.  Plaintiff Richard Hollihan brings this action on behalf of himself and a class of similarly-situated plaintiffs, pursuant to the Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act of 1973 and 42 U.S.C. § 1983, against

prison officials and medical providers for discriminating against them on the basis of their disability and for depriving them of their rights guaranteed by the Eighth Amendment of the United States Constitution and Article I, § 13 of the Pennsylvania Constitution.

2.      Mr. Hollihan is incarcerated at the State Correctional Institution at Somerset ("SCI Somerset") with a serious vision impairment requiring surgery. Mr. Hollihan has no vision in his left eye due to a dense cataract and has deteriorating vision in his right eye.  Despite repeated recommendations for cataract surgery by his doctors, the Pennsylvania Department of Corrections and its staff have denied Plaintiff Hollihan access to necessary medical care as a result of their discriminatory and unconstitutional "One Good Eye" policy, which denies surgical treatment in a diseased eye if an inmate has some vision in the other eye.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action pursuant to 28 U.S.C. § 2201, 2202, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), 42 U.S.C. §1983 and the Eighth Amendment to the United States Constitution.  The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to adjudicate the claims made under Article I, Section 13 of the Pennsylvania Constitution.

4.      This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§

1331 and 1343.

5.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) since Defendant Pennsylvania Department of Corrections' principal office is located in Mechanicsburg, Pennsylvania, within the Middle District.

## PARTIES

6.      Plaintiff Richard Hollihan is an adult individual currently incarcerated at SCI Somerset.  Mr. Hollihan sues for injunctive and declaratory relief on behalf of himself and on behalf of a class of plaintiffs who are currently or will in the future be subject to Defendant Pennsylvania Department of Corrections' discriminatory and unconstitutional "One Good Eye" policy.  Mr. Hollihan also seeks damages for the denial of his statutory and constitutional rights.

7.      Defendant Pennsylvania Department of Corrections ("DOC") is an agency of the State of Pennsylvania that operates SCI Somerset and receives federal funding.  The principal office for the DOC is located in Mechanicsburg, Pennsylvania.

8.      Defendant John Wetzel is the Secretary of the DOC.  He is responsible for the overall oversight, operation, and administration of the Commonwealth's correctional system.  He is sued in his official capacity.  At all relevant times, Defendant Wetzel has acted and will continue to act under color of state law.

9.      Defendant Brian Hyde is the Correctional Health Care Administrator at

SCI Somerset.  He is responsible for the overall oversight of health care at SCI Somerset.  He is sued in his official and individual capacities.  At all relevant times, Defendant Hyde has acted and will continue to act under color of state law.

10.    Defendant Dr. Rashida Mahmud is a medical doctor at SCI Somerset. She is sued in her individual capacity.  At all relevant times, Defendant Mahmud has acted and will continue to act under color of state law.

11.    Defendant Dr. John Robinson is the medical director at SCI Somerset. He is responsible for overseeing medical care at SCI Somerset and approving treatment.  He is sued in his official and individual capacity.  At all relevant times, Defendant Robinson has acted and will continue to act under color of state law.

12.    Defendant Wexford Health Sources, Inc. ("Wexford Health") is a company that provides health services for all DOC facilities.  The principal office for Wexford Health is located in Pittsburgh, Pennsylvania.  At all relevant times, Defendant Wexford Health has acted and will continue to act under color of state law.

13.    Defendant Dr. Donald Kera was at all relevant times an employee of Defendant Wexford Health who oversaw the health care provided by Wexford Health to inmates incarcerated by the DOC throughout the Commonwealth.  He is sued in his individual capacity.  At all relevant times, Defendant Kera has acted and will continue to act under color of state law.

## FACTS

The DOC's "One Good Eye" Policy

14.     On information and belief, Defendant DOC, has adopted an official policy and practice that denies necessary surgical treatment to inmates with a severe eye disease in one eye, but with another eye that provides some level of vision that Defendant DOC claims to be adequate.  This policy and practice is referred to as the "One Good Eye" policy.

15.     As a consequence of Defendant DOC's "One Good Eye" policy, inmates are denied necessary surgical treatment for cataracts and other conditions and are forced to languish with serious eye conditions, which can cause legal or total blindness in the diseased eye.

16.     As the Secretary of the DOC, Defendant Wetzel enforces and implements the DOC's "One Good Eye" policy.

17.     Defendant DOC's current "One Good Eye" policy is in the exclusive possession of Defendants and is not publically available.

18.     Defendant DOC's "One Good Eye" policy discriminates against individuals with physical eye impairments on the basis of their disability.

19.     There is no medical justification for the "One Good Eye" policy. Reducing expenditures by denying necessary medical care is not an appropriate justification for the "One Good Eye" policy.

20.     Defendant Wexford Health, as a matter of official corporate policy and/or custom, has enforced the discriminatory and unconstitutional "One Good Eye" policy.

The One Good Eye Policy and Cataracts

21.     As of 2007, the "One Good Eye" policy was applied to cataracts at SCI Somerset through Guidelines that refused cataract surgery unless (i) an inmate has Snellen binocular visual acuity testing of 20/50 (or worse) despite corrective devices;[1] (ii) there is potential for undetected retinal disease, which cannot be visualized due to the presence of the cataract; (iii) the cataract is hypermature; and (iv) the inmate's activities of daily living are significantly compromised by impaired visual acuity that is not corrected by eyeglasses and lighting.   On information and belief, these Guidelines are enforced at the present time in the same, or substantially the same, form.

22.     A cataract is a clouding of the lens of the eye that affects vision. Cataracts are the most common cause of reversible blindness.

23.     A cataract causes visual loss because opacification of the lens obstructs light from passing and being focused on the back of the eye, called the retina.

---

[1] Visual acuity is frequently measured according to the size of letters viewed on a Snellen chart, which commonly has a large "E" at the top corresponding to 20/200 vision.   Subsequent rows have increasing numbers of letters that decrease in size and correspond to higher visual acuity.

24.     Healthy visual acuity is 20/20 or better.  A person with 20/50 vision must be as close as 20 feet to see what a person with normal vision can see at 50 feet.

25.     Over time, cataracts may grow larger and more dense, resulting in increased clouding of the lens and decreased visual acuity.

26.     A patient with a hypermature cataract is legally blind, which corresponds to visual acuity of 20/200 or worse, and may only perceive light in that eye.  A patient who is only able to perceive light can see whether big bright lights in a room are on or off, but can see nothing else.

27.     A hypermature cataract prevents the detection of retinal disease and optic nerve health, which cannot be visualized due to the presence of the cataract.

28.     Cataract surgery is required to correct a hypermature cataract in an effort to restore vision to the eye.  Cataract surgery replaces the cloudy lens with an artificial lens.

29.     Non-surgical treatment, such as glasses or eye drops, will not restore vision in a patient with a hypermature cataract.

30.     Waiting to perform surgery until a cataract is hypermature may result in a worse surgical outcome than if surgery had been performed earlier.

31.     As a result of Defendant DOC's "One Good Eye" policy, inmates with a hypermature cataract or other serious eye condition will stay blind in an eye that

could be surgically corrected to provide good vision.

32.     Monocular vision results in a loss of depth perception, which causes balance issues and difficulty performing activities of normal living.

33.     Despite Defendant DOC's "One Good Eye" policy, under which inmates with vision worse than 20/50 in the better-seeing eye *should* have cataract or other surgery, in practice, the DOC refuses necessary surgery to inmates including those who have a hypermature cataract in one eye and vision that is *worse* than 20/50 in the better-seeing eye.

34.     The "One Good Eye" policy interferes with the independent medical judgment of physicians treating Mr. Hollihan and members of the class.

 Plaintiff Richard Hollihan

35.     Mr. Hollihan is a veteran of the U.S. Marine Corps, who was honorably discharged.

36.     Mr. Hollihan entered the Pennsylvania Department of Corrections system in 1986.

37.     Mr. Hollihan began experiencing pain in his right eye in 1999.

38.     Mr. Hollihan was transferred to SCI Somerset in 2001.

39.     Mr. Hollihan underwent cataract surgery for his right eye on November 6, 2001.  The cataract was removed and was replaced with an artificial lens.

40.     By 2008, Dr. Irwin, an optometrist at SCI Somerset, had determined that Mr. Hollihan's left eye required cataract surgery and Mr. Hollihan consented to this procedure.

41.     Notwithstanding the medical necessity for this procedure, Defendant DOC and its staff refused to permit cataract surgery, a decision that was grieved by Mr. Hollihan in 2010.

42.     Mr. Hollihan appealed the denial of this grievance to the final level of appeal where it was rejected, in December 2010.

43.     In February 2012, Defendant Mahmud and Dr. Shariat, an ophthalmologist at Somerset Hospital who examined Mr. Hollihan, determined that Mr. Hollihan's corrected vision in his right eye was 20/70 and that he had a very ripe cataract in his left eye.

44.     In February 2012, Dr. Dascani, a medical doctor at SCI Somerset, ordered a subsequent consultation with Dr. Shariat to take place in June 2012 regarding Mr. Hollihan's cataract.

45.     In March 2012, Dr. Irwin noted that Mr. Hollihan had a dense cataract in his left eye, which could not be refracted for visual acuity.

46.     In May 2012, a physical examination for Mr. Hollihan noted that visual acuity for Mr. Hollihan's left eye could not be tested due to his cataract and that the left eye (including the retina) could not be examined due to an opaque

pupil.

47.     In June 2012, Dr. Shariat examined Mr. Hollihan at SCI Somerset and determined that the corrected vision in his right eye was 20/70 and that he had a hypermature cataract in his left eye. As the referring physician, Defendant Mahmud recorded the results of Dr. Shariat's examination in Mr. Hollihan's medical records.

48.     In August 2012, Dr. Shariat examined Mr. Hollihan and again determined that he had corrected vision in his right eye of 20/70 and a hypermature cataract in his left eye.  Dr. Shariat requested Defendant Mahmud arrange for Mr. Hollihan's cataract surgery.

49.     Defendant Mahmud then ordered cataract surgery for Mr. Hollihan to take place in September 2012 and to be performed by Dr. Shariat.

50.     In September 2012, Defendant Mahmud noted that Mr. Hollihan was scheduled for cataract removal that month, which was to be performed by Dr. Shariat.

51.     In October 2012, Defendant Mahmud cancelled Mr. Hollihan's cataract surgery, but noted that the surgery would take place at a later time.

52.     Mr. Hollihan grieved the cancellation of his cataract surgery.

53.     On December 12, 2012, Superintendent Rozum denied Mr. Hollihan's appeal at the facility level.   Although Superintendent Rozum upheld the cancellation of Mr. Hollihan's surgery, he noted that it would be rescheduled.

54.     On January 24, 2013, DOC Chief Grievance Officer Dorina Varner issued a "Final Appeal Decision" denying Mr. Hollihan's appeal.  Although Chief Grievance Officer Varner upheld the cancellation of Mr. Hollihan's surgery, she noted that it would be rescheduled

55.     In May 2013, Dr. Irwin noted that Mr. Hollihan had a very dense cataract in his left eye and referred Mr. Hollihan to an ophthalmologist for cataract surgery.

56.     In May 2013, Defendant Mahmud recommended that Mr. Hollihan have a consultation in three months regarding the "very dense" cataract in his left eye.   However, Defendant Mahmud determined that Mr. Hollihan was not a candidate for cataract surgery at that time as his visual acuity in his right eye was 20/60.

57.     In May 2013, a physical examination of Mr. Hollihan showed that his right pupil was sluggish in response to light.

58.     On June 10, 2013 Mr. Hollihan filed a Request to Staff to the Medical Department requesting that he be allowed to see the ophthalmologist for surgery as recommended by Dr. Irwin.

59.     Defendant Hyde responded to Mr. Hollihan's request that because the vision in his right eye was 20/60, Mr. Hollihan was not a candidate for cataract surgery.

60.     In the summer and fall of 2013, Mr. Hollihan filed multiple requests to staff discussing the denial of cataract surgery.

61.     In September 2013, Defendant Mahmud noted that Mr. Hollihan had only light perception in his left eye and recommended that Mr. Hollihan have a consultation in three months regarding the cataract in his left eye.

62.     On December 19, 2013, Dr. Dascani noted that Mr. Hollihan had progressive loss of vision and was unable to see through the clouded cataract in his left eye and referred Mr. Hollihan to Dr. Vittone, an ophthalmologist.

63.     On December 22, 2013, Defendant Robinson, acting as the site or regional medical director of Defendant DOC, denied Dr. Dacani's referral, noting that Mr. Hollihan did not meet the criteria for surgery.

64.     On December 23 2013, Defendant Kera, in his capacity as an employee of Defendant Wexford Health,  also denied Dr. Dascani's request for a referral to the ophthalmologist, observing that Mr. Hollihan had "good vision in his right eye."

65.     In February 2014, Mr. Hollihan filed an inmate Request to Staff seeking an explanation as to why he had not seen Dr. Vittone in January 2014.

66.     Defendant Hyde denied this request because Mr. Hollihan did not meet the criteria for cataract extraction.

67.     On February 22, 2014, Mr. Hollihan filed a grievance related to failing

to see an ophthalmologist and the continuing deterioration of his left eye.

68.     On March 3, 2014, Deputy Superintendent Joseph Mazurkiewicz denied the grievance and stated: **"DOC Policy 13.2.1, Section 16, Chapter 4 addresses cataract surgery.  You have corrected vision better than 20/50 in one eye.  All local remedies have been exhausted per policies governing the Medical Department.   Based on the above information, this grievance is denied."** (emphasis added).

69.     On March 31, 2014, Superintendent Rozum denied Mr. Hollihan's appeal at the facility level.  In particular, Superintendent Rozum stated: **"[D]OC Policy is being followed concerning the inmate's request for cataract surgery. Medical has found the inmate has corrected vision better than 20/50 in one eye, which makes him ineligible for the surgery at this time."**  (emphasis added). Superintendent Rozum also denied "inmate's request for Policy change."

70.     On May 22, 2014, DOC Chief Grievance Officer Dorina Varner issued a "Final Appeal Decision" denying Mr. Hollihan's appeal.  Chief Grievance Officer Varner noted that "there is nothing new to add to the Superintendent's response dated March 31, 2014."

71.     Prison staff have described the DOC policy referenced in Paragraphs 68 and 69 to Mr. Hollihan as a "One Eye" policy or "One Good Eye" policy.

72.     Given that Mr. Hollihan's right eye consistently measured visual acuity

13

of 20/60 or 20/70 during prior testing, it is implausible that Mr. Hollihan's right eye was "better than 20/50" at the time he filed his 2014 grievance.

73.     As a result of Defendant DOC's denial of cataract surgery, Mr. Hollihan is essentially blind in his left eye.

74.     The cataract in Mr. Hollihan's left eye prevents the detection of retinal disease and optic nerve health, which cannot be visualized due to the presence of the cataract.  Mr. Hollihan is especially at risk for retinal disease and optic nerve issues due to his other health problems.

75.     Vision in Mr. Hollihan's better-seeing eye is deteriorating due to the stress caused by the loss of sight in his cataract-afflicted eye.

76.     The refusal of Defendant DOC to provide Mr. Hollihan and other inmates with similar visual disabilities with access to medical services is discrimination on the basis of his disability.

77.     As a result of his impairment, Mr. Hollihan experiences great difficulty reading and writing, which are activities of daily living within prison.

78.     Mr. Hollihan's deteriorating monocular vision also causes him to frequently walk into people and objects and substantially limits his ability to perform manual tasks.

79.     Mr. Hollihan's disability, and Defendant DOC's failure to accommodate his disability, prevents him from participating in and benefiting from

the programs and services offered at SCI Somerset, including religious services and communications with family, counsel and the courts, and endangers his personal health and safety.

80.    The cataract policy purportedly contained in DOC Policy 13.2.1, Section 16, Chapter 4 is not publically available and is in the exclusive possession of Defendants.

## CLASS ACTION ALLEGATIONS

81.    Plaintiff brings this suit as a class action on behalf of himself and all others similarly situated (the "Class") pursuant to Rules 23(a) and 23(b)(2).

82.    Plaintiff seeks to represent the following class on claims for declaratory and injunctive relief:

> All persons who are currently incarcerated in a Pennsylvania Department of Corrections facility who have been diagnosed with a serious eye condition, which absent surgical intervention will cause serious visual impairment in the afflicted eye, and who have been refused necessary surgical treatment by the Pennsylvania Department of Corrections or its staff, pursuant to a policy or practice of denying surgery to inmates who have one better-seeing eye.

83.    As a result of Defendants' deliberate indifference to the serious medical needs of the Class, the members of the Class are or will be subjected to cruel and unusual punishment and deprived of other constitutional and statutory rights.    Plaintiffs therefore seek declaratory and injunctive relief to eliminate Defendants' actions, policies, and practices which infringe their rights.

84.   The requirements of Rules 23(a) and 23(b)(2) are all satisfied by this class action.

85.   The information as to the size of the Class and the identity of the inmates who are in the class is in the exclusive control of Defendants.   On information and belief the class encompasses hundreds of inmates in the DOC, who are geographically dispersed throughout the Commonwealth of Pennsylvania.   The number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

86.   Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire Class.   These legal and factual questions include, but are not limited to:

a.  The nature, scope and operations of Defendants' wrongful practices;

b.  The type of injury alleged by the Class;

c.  The type of necessary medical treatment sought by the Class;

d.  Whether DOC's "One Good Eye" policy, which denies necessary surgical treatment for serious eye conditions to inmates who have one better-seeing eye, violates the Eighth Amendment to the U.S. Constitution and Article I, Section 13 of the Pennsylvania Constitution.

e.  Whether Defendants' conduct violates Title II of the Americans with Disabilities Act;

f.  Whether Defendants' conduct violates Section 504 of the Rehabilitation Act;

87.  Plaintiff's claims are typical of the members of the Class because Plaintiff and all Class Members were injured by the same wrongful policy and practices of Defendants as described in this Complaint.  Plaintiff's claims arise from the same practices and course of conduct that gives rise to the claims of the Class Members, and are based on the same legal theories.

88.  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are contrary to or in conflict with those of the Class they seek to represent.  Plaintiff is represented by competent and skilled counsel whose interests are fully aligned with the interests of the Class.

89.  Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

90.  Mr. Hollihan fully exhausted his available administrative remedies.

## CLAIMS

### Count I: Discrimination and Exclusion From Services of a Public Entity In Violation of the Americans With Disabilities Act
(against Defendants Pennsylvania Department of Corrections, Wetzel, and Hyde in their official capacities)

91.     Plaintiff Richard Hollihan incorporates paragraphs 1 through 90 of this Complaint as if fully set forth herein.

92.     Defendant Pennsylvania Department of Corrections, by and through Defendants Wetzel and Hyde and other DOC staff, discriminated against Plaintiff Richard Hollihan and caused him to be excluded from participation in programs and denied access to services at SCI Somerset, due to his disability in violation of Title II of the Americans with Disabilities Act.

### Count II: Exclusion From Services of a Federally Funded Entity in Violation of the Rehabilitation Act
(against Defendant Pennsylvania Department of Corrections)

93.      Plaintiff Richard Hollihan incorporates paragraphs 1 through 90 of this Complaint as if fully set forth herein.

94.     Defendant Pennsylvania Department of Corrections, a recipient of federal funds, caused Plaintiff Richard Hollihan to be excluded from participation in programs and denied access to services at SCI Somerset, due to his disabilities in violation of Section 504 of the Rehabilitation Act.

**Count III: Deprivation of Eighth Amendment Right Not to Undergo Cruel and Unusual Punishment**
(against Defendants Wetzel, Hyde, and Robinson in their official capacities)

95.     Plaintiffs Richard Hollihan incorporates paragraphs 1 through 90 of this Complaint as if fully set forth herein.

96.     Defendant John Wetzel, Secretary of Corrections; Defendant Bryan Hyde, Correctional Health Care Administrator at SCI Somerset; and Defendant Robinson, medical director at SCI Somerset, have enforced the Pennsylvania Department of Corrections' "One Good Eye" policy, which constitutes a deliberate indifference to the serious medical needs of prisoners requiring eye surgeries thereby establishing a violation of the Eighth Amendment to the United States Constitution.

**Count IV: Deprivation of Right Not to Undergo Cruel and Unusual Punishment under the Pennsylvania Constitution**
(against Defendants Wetzel, Hyde, and Robinson in their official capacities)

97.     Plaintiffs Richard Hollihan incorporates paragraphs 1 through 90 of this Complaint as if fully set forth herein.

98.     Defendant John Wetzel, Secretary of Corrections; Defendant Bryan Hyde, Correctional Health Care Administrator at SCI Somerset; and Defendant Robinson, medical director at SCI Somerset, have enforced the Pennsylvania Department of Corrections' "One Good Eye" policy, which constitutes a deliberate indifference to the serious medical needs of prisoners requiring eye surgeries

thereby establishing a violation of Article I, § 13 of the Pennsylvania Constitution.

**Count V: Deprivation of Eighth Amendment Right Not to Undergo Cruel and Unusual Punishment**
(against Defendants Hyde, Mahmud, Robinson, Wexford Health, and Kera in their individual capacities)

99.    Plaintiff Richard Hollihan incorporates paragraphs 1 through 90 of this Complaint as if fully set forth herein.

100.    Defendant Hyde's conclusion, on multiple occasions, that Mr. Hollihan failed to meet the criteria for a cataract surgery and denial of cataract surgery based on the "One Good Eye" policy constitutes deliberate indifference to Mr. Hollihan's serious medical need thereby violating his right to be free from cruel and unusual punishment as proscribed by the Eighth Amendment of the United States Constitution.

101.    Defendant Mahmud's cancellation of Mr. Hollihan's cataract surgery and failure to re-schedule it, as well as denial of cataract surgery based on the "One Good Eye" policy, constitutes deliberate indifference to Mr. Hollihan's serious medical need thereby violating his right to be free from cruel and unusual punishment as proscribed by the Eighth Amendment of the United States Constitution.

102.    Defendant Robinson's awareness of Mr. Hollihan's need for cataract surgery and refusal to approve this necessary medical treatment constitutes deliberate indifference to Mr. Hollihan's serious medical need, thereby violating his

right to be free from cruel and unusual punishment as proscribed by the Eighth Amendment of the United States Constitution.

103.   Defendant Wexford Health, as a matter of official corporate policy or custom, has enforced the discriminatory and unconstitutional "One Good Eye" policy.  Defendant Wexford Health's awareness of Mr. Hollihan's need for cataract surgery and denial of cataract surgery based on the "One Good Eye" policy constitutes deliberate indifference to Mr. Hollihan's serious medical need, thereby violating his right to be free from cruel and unusual punishment as proscribed by the Eighth Amendment of the United States Constitution.

104.   Defendant Kera's awareness of Mr. Hollihan's need for cataract surgery and denial of cataract surgery based on the "One Good Eye" policy constitutes deliberate indifference to Mr. Hollihan's serious medical need, thereby violating his right to be free from cruel and unusual punishment as proscribed by the Eighth Amendment of the United States Constitution.

## RELIEF DEMANDED

WHEREFORE Plaintiff Richard Hollihan respectfully requests the following relief:

1.      For the named plaintiff and members of the plaintiff Class, a Declaratory Judgment that Defendant Pennsylvania Department of Corrections' "One Good Eye" policy violates the Americans with Disabilities Act, the

21

Rehabilitation Act, the Eighth Amendment of the United States Constitution, and Article I, § 13 of the Pennsylvania Constitution;

2.      For the named plaintiff, injunctive relief ordering cataract surgery, which shall occur as soon as possible, as well as any medically appropriate and necessary follow-up treatment;

3.      For the members of the plaintiff Class, injunctive relief ordering (a) identification of all inmates who were denied recommended eye surgery under the Defendant Pennsylvania Department of Corrections' "One Good Eye" policy and (b) the provision of medically necessary and appropriate treatment, including surgery to all identified inmates;

4.      An award of appropriate compensatory and punitive damages against Defendants in favor of Mr. Hollihan in an amount to be determined by the finder of fact;

5.      Reasonable attorneys' fees and costs; and

6.      Such other relief the Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiffs respectfully demand a trial by jury on all issues within the instant action so triable.

Respectfully submitted,

_Thomas B. Schmidt III /EW_

Thomas B. Schmidt III (PA 19196)
PEPPER HAMILTON LLP
100 Market Street
Suite 200
P.O. Box 1181
Harrisburg, PA 17108-1181
Phone:  (717) 255-1155
Fax:      (717) 238-0575
Email:   schmidtt@pepperlaw.com

_Eric Rothschild /EW_

Eric Rothschild (PA 71746)

_Eric Wolfish_

Eric Wolfish (PA 318399)

PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Phone:  (215) 981-4000
Fax:      (215) 981-4750
Email:  rothsche@pepperlaw.com
            wolfishe@pepperlaw.com

_David Rudovsky /EW_

David Rudovsky (PA 15168)

KAIRYS, RUDOVSKY, MESSING
& FEINBERG LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
Phone:  (215) 925-4400
Fax:      (215) 925-5365
Email:  drudovsky@krlawphila.com

*Attorneys for Plaintiff Richard Hollihan*

Date:  January 2, 2015