IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD HOLLIHAN, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) Civil No. 3:15-CV-00005-CCC |
| vs. | ) |
| | ) Hon. Christopher C. Conner |
| PENNSYLVANIA DEPARTMENT OF | ) |
| CORRECTIONS, et al. | ) ORAL ARGUMENT REQUESTED |
| | ) |
| *Defendants*. | ) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO THE MOTION TO DISMISS
OF DEFENDANT WEXFORD HEALTH SOURCES, INC.**

**PEPPER HAMILTON LLP**

Eric Rothschild (PA 71746)
Eric Wolfish (PA 318399)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

Thomas B. Schmidt III  (PA 19196)
100 Market Street
Suite 200
P.O. Box 1181
Harrisburg, PA 17108-1181

**KAIRYS, RUDOVSKY, MESSING &
FEINBERG LLP**

David Rudovsky (PA 15168)
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106

**PENNSYLVANIA INSTITUTIONAL LAW
PROJECT**
Angus Love  (PA 22392)
The Cast Iron Building
718 Arch Street, Suite 304 South
Philadelphia, PA 19106

Alexandra Morgan-Kurtz (PA 312631)
429 Forbes Ave, Ste 800
Pittsburgh, PA 15219

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ...............................................................................3

      A.    The "One Good Eye" Policy .................................................3

      B.    The "One Good Eye" Policy and Cataracts .....................................4

      C.    Defendant Wexford ..........................................................6

      D.    Plaintiff and Enforcement of the "One Good Eye" Policy by the Wexford Employees ...............................................6

      E.    Mr. Hollihan's Grievance ...................................................8

      F.    Mr. Hollihan's Medical Condition ............................................8

LEGAL STANDARD ....................................................................................9

ARGUMENT ...........................................................................................10

I.    MR. HOLLIHAN HAS ADEQUATELY STATED AN EIGHTH AMENDMENT CLAIM AGAINST DEFENDANT WEXFORD...........10

      A.    Wexford Does Not Dispute its Deliberate Indifference to Mr. Hollihan's Serious Medical Condition.............................................11

            1.    Mr. Hollihan's cataract presented a serious medical condition. ..........................................................11

            2.    Wexford and its employees were aware of Mr. Hollihan's need for cataract surgery, but failed to provide it. ..........................................................12

      B.    The "One Good Eye" Policy Deprived Mr. Hollihan of the Medical Judgment of his Physicians ...............................14

**Page**

II.    WEXFORD'S ENFORCEMENT OF THE "ONE GOOD EYE"
       POLICY UNDER COLOR OF STATE LAW STATES A CLAIM
       UNDER THE EIGHTH AMENDMENT.................................................16

III.   PLAINTIFF HAS SUFFICIENTLY STATED CLASS
       ALLEGATIONS .......................................................................19

       A.    Plaintiff Has Sufficiently Stated the Grounds for
             Certification of Rule 23(b)(2) Class...............................19

       B.    The Putative Class is "Cohesive"....................................20

       C.    The Court Should Disregard Wexford's Unsupported
             Exhaustion Argument.....................................................22

CONCLUSION .....................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arnold v. Prison Health Servs.*,
    2014 U.S. Dist. LEXIS 132252 (M.D. Pa. Sept. 22, 2014) ................................ 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................. 10

*Atkinson v. Taylor*,
    316 F.3d 257 (3d Cir. 2003) ....................................................... 16

*Baby Neal ex rel. Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) .......................................................... 21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................. 9

*Boring v. Sanders*,
    2013 U.S. Dist. LEXIS 114215 (M.D. Pa. July 23, 2013) .................... 12, 13, 16

*Byers v. Intuit, Inc.*,
    600 F.3d 286 (3d Cir. 2010) ......................................................... 9

*Carter v. Pa. Dep't of Corr.*,
    2008 U.S. Dist. LEXIS 102016 (E.D. Pa. Dec. 17, 2008) ...................... 17

*Clarke v. Lane*,
    267 F.R.D. 180 (E.D. Pa. 2010) ..................................................... 21

*Colwell v. Bannister*,
    763 F.3d 1060 (9th Cir. 2014) ................................................. passim

*Estelle v. Gamble*,
    429 U.S. 97 (1976) ............................................................... 11, 12

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ................................................................. 10

*Fletcher v. O'Donnell*,
    867 F.2d 791 (3d Cir. 1989) ........................................................ 18

**Page(s)**

*Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
   284 F.R.D, 238 (E.D. Pa. 2012)..........................................................................19

*Hedges v. United States*,
   404 F.3d 744 (3d Cir. 2005) .............................................................................10

*Helling v. McKinney*,
   509 U.S. 25 (1993)..........................................................................................10

*Inmates of the Northumberland County Prison v. Reish*,
   2009 U.S. Dist. LEXIS 126479 (M.D. Pa. Mar. 17, 2009) ...............................21

*Jones v. Bock*,
   549 U.S. 199 (2007).........................................................................................22

*Keybank Nat'l Assoc. v. Voyager Group, LP*,
   2010 U.S. Dist. LEXIS 34071 (W.D. Pa. Apr 7, 2010) ....................................10

*Landsman & Funk P.C. v. Skinder-Strauss Assocs.*,
   640 F.3d 72 (3d Cir. 2011) ...............................................................................19

*Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*,
   834 F.2d 326 (3d Cir. 1987) .............................................................................11

*Montgomery v. Pinchak*,
   294 F.3d 492 (3d Cir. 2002) .............................................................................11

*Natale v. Camden County Corr. Facility*,
   318 F.3d 575 (3d Cir. 2003) ......................................................................17, 18

*Negron v. Bickell*,
   2014 U.S. Dist. LEXIS 92363 (M.D. Pa. July 8, 2014) ....................................15

*Ray v. Kertes*,
   285 F.3d 287 (3d Cir. 2002) .............................................................................22

*Rhodes v. Chapman*,
   452 U.S. 337 (1981).........................................................................................10

*Royster v. Corizon*,
   2014 U.S. Dist. LEXIS 56715 (M.D. Pa Apr. 22, 2014)....................................16

**Page(s)**

*Scherer v. Pa. Dep't of Corr.*,
    2007 U.S. Dist. LEXIS 84935 (W.D. Pa. Nov. 16, 2007)...................................17

*Spruill v. Gillis*,
    372 F.3d 218 (3d Cir. 2004) ................................................................................13

*Swank v. Wal-Mart Stores*,
    2015 U.S. Dist. LEXIS 41789 (W.D. Pa. Mar. 31, 2015) .................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)........................................................................................21

*West v. Atkins*,
    487 U.S. 42 (1988)..............................................................................................17

## PRELIMINARY STATEMENT

In 2008, a medical provider at SCI Somerset diagnosed a cataract in Plaintiff Richard Hollihan's left eye and ophthalmologists prescribed cataract surgery to save his vision.  As a prisoner, Mr. Hollihan was at the mercy of the Pennsylvania Department of Corrections ("DOC"), Wexford Health Sources, Inc. ("Wexford"), and their respective staffs, not only to diagnose the opaque cataract that rendered his left eye essentially blind, but also to provide appropriate medical treatment, including his prescribed cataract surgery.  Instead, Defendants, pursuant to official policy and practice, denied necessary medical care to Mr. Hollihan, as well as other inmates with serious eye conditions, including severe cataracts, thereby condemning them to partial or total blindness.  Specifically, under their "One Good Eye" policy, Defendants deny necessary surgical treatment to inmates with a severe disease in one eye, but with another eye that provides some level of vision that the policy claims to be adequate.

As the medical services provider for the DOC, Wexford was under a contractual, ethical and, most important for the purposes of this litigation, a constitutional duty to provide inmates with appropriate care.  However, under the "One Good Eye" policy, Defendants Rashida Mahmud, John Robinson, and

Donald Kern[1] (the "Wexford Employees") denied Mr. Hollihan's prescribed cataract surgery.  As Wexford concedes that Mr. Hollihan has a "clear legal right to medical attention and treatment," and no medical treatment was actually provided prior to the filing of this lawsuit, there can be no dispute that Mr. Hollihan has stated an Eighth Amendment claim as to Wexford.[2]  Indeed, the Ninth Circuit recently held that "the blanket, categorical denial of **medically indicated surgery** solely on the basis of an administrative policy that **'one eye is good enough for prison inmates'** is the **paradigm of deliberate indifference**." *Colwell v. Bannister*, 763 F.3d 1060, 1063 (9th Cir. 2014) (emphasis added).

Wexford's Motion to Dismiss (the "Motion") is a premature and thinly-veiled "no evidence" motion for summary judgment.  Relying only on cases arising outside the 12(b)(6) context, the Motion fails to accept the well-pleaded allegations in the Complaint as true and should be denied on that basis alone.  Not only that, the Motion is premised on Wexford's hypothetical, hoped-for version of the facts, which are pure speculation and contradict the Complaint.  Wexford's hypotheses are plainly improper grounds on which to seek dismissal; indeed, they underscore the importance of denying the Motion and proceeding to discovery.

---

[1] This name appeared as "Kera" in the Complaint due to the appearance of a poorly-copied medical record provided by the DOC.  Plaintiff subsequently learned that it is spelled "Kern."

[2] *See* Dkt. No. 18, Brief in Support of Motion to Dismiss ("Mot.") at 5.

Despite Mr. Hollihan's separate motion for class certification, which has gone unanswered (Dkt. No. 3), Wexford's Motion addresses the merits of only one class certification element—cohesiveness.  Since Wexford has not moved to dismiss the class allegations, this issue does not warrant consideration here.  And, in any event, Wexford attacks a hypothetical class definition that bears no resemblance to that in the Complaint, which is plainly cohesive.

Because the Complaint clearly states a cause of action as to Wexford, its Motion should be denied in its entirety.

## STATEMENT OF FACTS

### A.    The "One Good Eye" Policy

Under their "One Good Eye" policy and practice, Defendants deny necessary surgical treatment to inmates with a severe eye disease in one eye, but with another eye that provides some level of vision that the policy claims to be adequate.  Dkt. No. 1, Complaint ("Compl.") ¶¶ 14, 20.  As a consequence of the "One Good Eye" policy, inmates are denied necessary surgical treatment for cataracts and other conditions and are forced to languish with serious eye conditions that can cause legal or total blindness in the diseased eye.[3]  *Id.* ¶ 15. There is no medical justification for the "One Good Eye" policy.  *Id.* ¶ 19.

---

[3] The current "One Good Eye" policy is in Defendants' exclusive possession and is not publically available.  *Id.* ¶ 17.

**B.      The "One Good Eye" Policy and Cataracts**

As of 2007, the "One Good Eye" Policy was applied to cataracts at SCI

Somerset through Guidelines that refused cataract surgery unless (i) an inmate has

Snellen binocular visual acuity testing of 20/50 (or worse) despite corrective

devices;[4] (ii) there is potential for undetected retinal disease, which cannot be

visualized due to the presence of the cataract; (iii) the cataract is hypermature; and

(iv) the inmate's activities of daily living are significantly compromised by

impaired visual acuity that is not corrected by eyeglasses and lighting.  *Id.* ¶ 21.

On information and belief, these Guidelines are enforced at the present time in the

same, or substantially the same, form.  *Id.*

Cataracts are the most common cause of reversible blindness.  *Id.* ¶ 22.  A

cataract is a clouding of the lens of the eye that causes visual loss because

opacification of the lens obstructs light from passing and being focused on the back

of the eye, called the retina.  *Id.* ¶¶ 22-23.  Over time, cataracts may grow larger

and more dense, resulting in increased clouding of the lens and decreased visual

acuity.  *Id.* ¶ 25.  A patient with a hypermature cataract is legally blind, which

corresponds to visual acuity of 20/200 or worse, and may only perceive light in

---

[4] A Snellen chart is used to measure visual acuity and commonly has a large
"E" at the top corresponding to 20/200 vision.  *Id.* ¶ 21, FN 1.

that eye.[5]  *Id.* ¶ 26.  A hypermature cataract also prevents the detection of retinal disease and optic nerve health, which cannot be visualized due to the presence of the cataract.  *Id.* ¶ 27.

As a result of the "One Good Eye" policy, inmates with a hypermature cataract or other serious eye condition will stay blind in an eye that could be surgically corrected to provide good vision.  *Id.* ¶ 31.  In addition to the serious injury inherent in losing vision in one eye, monocular vision results in a loss of depth perception, which causes balance issues and difficulty performing activities of normal living.  *Id.* ¶ 32.

Cataract surgery is required to correct a hypermature cataract in an effort to restore vision to the eye.  *Id.* ¶ 28.  Non-surgical treatment, such as glasses or eye drops, will not restore vision in a patient with a hypermature cataract.  *Id.* ¶ 29. Waiting to perform surgery until a cataract is hypermature may result in a worse surgical outcome than if surgery had been performed earlier.  *Id.* ¶ 30.  The "One Good Eye" policy thus interferes with the independent medical judgment of physicians treating Mr. Hollihan and members of the class.  *Id.* ¶ 34.

---

[5] A person with 20/50 vision must be as close as 20 feet to see what a person with normal 20/20 vision can see at 50 feet.  *Id.* ¶ 24.

## C.     Defendant Wexford

Defendant Wexford is a national for-profit prison healthcare provider contracted, at all relevant times, to provide health services for all DOC facilities and acting under color of law. *Id.* Wexford, as a matter of official corporate policy and/or custom, has enforced the "One Good Eye" policy. *Id.* ¶ 20. As described further below, the Wexford Employees enforced the "One Good Eye" policy and denied Mr. Hollihan's prescribed cataract surgery.

## D.     Plaintiff and Enforcement of the "One Good Eye" Policy by the Wexford Employees

Mr. Hollihan is a veteran of the U.S. Marine Corps, who was honorably discharged, and is currently incarcerated at SCI Somerset. Compl. ¶¶ 2, 35. In 2008, an optometrist at SCI Somerset determined that Mr. Hollihan's left eye required cataract surgery. *Id.* ¶ 40. Notwithstanding the medical necessity of this procedure, Defendant DOC and Wexford Employees refused to permit the surgery. *Id.* ¶ 41. Over the next four years, several doctors, including Defendant Mahmud (a Wexford Employee), examined Mr. Hollihan and determined the presence of a dense cataract in his left eye. *Id.* ¶¶ 40-47. By 2012, the cataract in Mr. Hollihan's left eye had become hypermature and the vision in his right eye was deteriorating. *Id.* ¶¶ 2, 43-48.

In February 2012, Defendant Mahmud and an ophthalmologist examined Mr. Hollihan and determined that he had a very ripe cataract in his left eye. *Id.* ¶ 43. In August 2012, the ophthalmologist reexamined Mr. Hollihan and requested Defendant Mahmud arrange for a cataract surgery. *Id.* ¶ 48. Defendant Mahmud scheduled the cataract surgery to take place in September 2012, but she later cancelled the procedure, noting that it would be rescheduled. *Id.* ¶¶ 49-51.

In May 2013, an optometrist referred Mr. Hollihan to an ophthalmologist for cataract surgery. *Id.* ¶ 55. Defendant Mahmud denied this referral. *Id.* While she acknowledged the presence of a "very dense" cataract in Mr. Hollihan's left eye, she determined that Mr. Hollihan was not a candidate for cataract surgery as the visual acuity in his right eye was 20/60. *Id.* ¶ 56. Instead, she recommended Mr. Hollihan have a follow up consultation in three months. *Id.* ¶ 56. Defendant Mahmud reexamined Mr. Hollihan in September 2013 and noted that he had only light perception in his left eye. *Id.* ¶ 61. She again recommended that Mr. Hollihan have another consultation in three months. *Id.* ¶ 61.

On December 19, 2013, a doctor at SCI Somerset noted that Mr. Hollihan had progressive vision loss and referred Mr. Hollihan to an ophthalmologist. *Id.* ¶ 62. Defendant Robinson (a Wexford Employee) denied this referral on the grounds that Mr. Hollihan did not meet the criteria for surgery. *Id.* ¶ 63.

Defendant Kern (a Wexford Employee) also denied this referral, observing that Mr. Hollihan had "good vision in his right eye."  *Id.* ¶ 64.

### E.    Mr. Hollihan's Grievance

Mr. Hollihan filed a grievance related to his inability to see an ophthalmologist and receive treatment for the continuing deterioration in his left eye.  Compl. ¶ 67.  Consistent with the actions of the Wexford Employees, on March 3, 2014, Deputy Superintendent Joseph Mazurkiewicz denied Mr. Hollihan's grievance and stated:  **"DOC Policy 13.2.1, Section 16, Chapter 4 addresses cataract surgery.  You have corrected vision better than 20/50 in one eye."**  *Id.* ¶ 68 (emphasis added).  Likewise, on March 31, 2014, Superintendent Rozum denied Mr. Hollihan's appeal at the facility level and stated:  **"[D]OC Policy is being followed concerning the inmate's request for cataract surgery.  Medical has found the inmate has corrected vision better than 20/50 in one eye, which makes him ineligible for the surgery at this time."**  *Id.* ¶ 69 (emphasis added).  This denial was upheld on final appeal on May 22, 2014.  *Id.* ¶ 70.

### F.    Mr. Hollihan's Medical Condition

The failure to treat Mr. Hollihan's cataract left him essentially blind in his left eye.  Compl. ¶¶ 73-74.  The vision in Mr. Hollihan's better-seeing eye further deteriorated due to the stress caused by the loss of sight in the cataract-afflicted

eye. *Id.* ¶ 75.  As a result of his impairment, Mr. Hollihan would frequently walk

into people and objects and he experienced great difficulty in reading and writing –

activities of daily living within prison.  *Id.* ¶¶ 77-78.  He was unable to participate

in and benefit from the programs and services offered at SCI Somerset, including

religious services and communications with family, counsel, and the courts.  *Id.*

¶ 79.  Mr. Hollihan's disability endangered both his health and safety.  *Id.*

     After a ***six year delay*** from the time of his diagnosis, Mr. Hollihan received

cataract surgery in late February 2015, following the filing of this lawsuit and

motion for class certification.[6]

## LEGAL STANDARD

     In evaluating Wexford's Motion, the Court must accept all of Plaintiff's

factual allegations as true and consider the complaint in the light most favorable to

him.  *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010).  In order for a

complaint to survive a motion to dismiss, it must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A plaintiff's pleading burden is

---

[6] Although Mr. Hollihan no longer seeks cataract surgery for himself, all other Relief Demanded is still being sought, including for declaratory judgment (¶ 1), medically appropriate and necessary follow-up treatment for Mr. Hollihan (¶ 2), injunctive relief (¶ 3), damages (¶ 4), attorney fees (¶ 5), and other relief (¶ 6). *See* Compl. at pp. *18-22.

satisfied where the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Keybank Nat'l Assoc. v. Voyager Group, LP,* 2010 U.S. Dist. LEXIS 34071, at *2 (W.D. Pa. Apr 7, 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  It is the defendant's burden to show that the complaint fails to do this.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## **ARGUMENT**

## I.   **MR. HOLLIHAN HAS ADEQUATELY STATED AN EIGHTH AMENDMENT CLAIM AGAINST DEFENDANT WEXFORD**

The Eighth Amendment claim against Wexford should not be dismissed, because Mr. Hollihan has pleaded adequate facts to allege Wexford's deliberate indifference to his serious medical need.  At the core of the Eighth Amendment is the prohibition against cruel and unusual punishment.  While prisons may be "restrictive and even harsh," *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981), society may not simply lock away offenders and "let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Thus, when the state imprisons an individual, such that the person is unable to care for himself, the Constitution imposes "a corresponding duty to assume some responsibility for his safety and general well being." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).  This responsibility, in the context of inmate health care,

precludes prison officials from displaying "deliberate indifference" to an inmate's "serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976).

### A.      Wexford Does Not Dispute its Deliberate Indifference to Mr. Hollihan's Serious Medical Condition

A deliberate indifference claim has two elements:  (1) an objective component under which the plaintiff must show that denial of care itself was serious or that it had serious consequences; and (2) a subjective component under which the plaintiff must show that the defendant has a sufficiently culpable state of mind.  *See Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). Wexford does not dispute that the Complaint sufficiently alleges the elements of deliberate indifference.  Indeed, Wexford admits that "Mr. Hollihan has a clear legal right to medical attention and treatment."  Mot. at 5.

### 1.      Mr. Hollihan's cataract presented a serious medical condition.

There is no question that cataracts present a serious medical need.  A medical need is serious if it has been diagnosed by a physician as requiring treatment, or if it is so obvious that a lay person could easily recognize the necessity for a doctor's attention.  *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Cataracts result in drastic health effects, including partial blindness.  Indeed, this Court has recognized that "**serious vision problems like cataracts or glaucoma, conditions which can result in**

-11-

blindness, are generally acknowledged as the type of 'serious medical need' which triggers Eighth Amendment scrutiny in a corrections context." *Boring v. Sanders*, 2013 U.S. Dist. LEXIS 114215, at *17-18 (M.D. Pa. July 23, 2013) (citing cases from around the country that reached the same conclusion) (emphasis added).

In *Colwell*, the Ninth Circuit similarly concluded that cataracts present a serious medical need. 763 F.3d at 1066-68. The court noted that "[m]onocular blindness is the loss of the function of an organ" and cited numerous opinions finding that "similar and even less severe losses of vision are serious medical needs." *Id.* at 1066-67. The court also found that Colwell's cataract was "severe," as it essentially resulted in "monocular blindness [and] caused him physical injury," in part as a result of bumping into objects and people. *Id.* at 1067. Mr. Hollihan's hypermature cataract presents the same severe medical issues and undoubtedly constitutes a serious medical need.

### 2.   Wexford and its employees were aware of Mr. Hollihan's need for cataract surgery, but failed to provide it.

The *Estelle* deliberate indifference standard is met *inter alia* (1) when prison authorities deny reasonable requests for medical treatment and such denial exposes the inmate to undue suffering or "the threat of tangible residual injury," or (2) when knowledge of the need for medical care is accompanied by the intentional

refusal to provide that care.  *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

The Ninth Circuit held that the denial of surgery under a "One Good Eye" policy,

which "require[s] an inmate to endure reversible blindness in one eye if he can still

see out of the other," is the "*very definition of deliberate indifference*."  *Colwell*,

763 F.3d at 1068.  Likewise, addressing the same issue presented here, this Court

concluded:

> Because cataracts can be a serious medical concern, and constitute a
> serious medical need, it follows that a complaint which adequately
> alleges *deliberate indifference by prisoner medical staff to an
> inmate's cataracts cannot be summarily dismissed at the outset of a
> lawsuit.*

*Boring*, 2013 U.S. Dist. LEXIS 114215, at *19 (emphasis added).

The Complaint clearly alleges that Wexford and its Employees knew of Mr.

Hollihan's hypermature cataract and his prescribed cataract surgery, yet refused to

provide him medical treatment under the unconstitutional "One Good Eye" policy.

Dr. Mahmud cancelled Mr. Hollihan's cataract surgery and noted that it would be

rescheduled, but subsequently denied surgery because the visual acuity in Mr.

Hollihan's right eye was 20/60.  Compl. ¶¶ 50-51, 56.[7]  Dr. Robinson denied Mr.

Hollihan's referral to an ophthalmologist because he did not meet the "criteria" for

surgery.  *Id.* ¶ 63.  Dr. Kern also denied that referral, observing that Mr. Hollihan

---

[7] Wexford notes that Dr. Mahmud ordered cataract surgery for Mr. Hollihan, but deceptively omits the fact that she later cancelled it.  Mot. at 4.

had "good vision in his right eye." *Id.* ¶ 64.  Accordingly, Wexford's Motion must

be denied.  *See, e.g.*, *Arnold v. Prison Health Servs.*, 2014 U.S. Dist. LEXIS

132252, at *6 (M.D. Pa. Sept. 22, 2014) (Conner, J.) (denying motion to dismiss

by a medical services provider and medical staff based on their failure to treat an

infected eye and noting that plaintiff's "allegations that the policies, practices and

customs of defendants in deliberately delaying or denying him medical treatment

are sufficient to state an Eighth Amendment claim.").

> **B.**    **The "One Good Eye" Policy Deprived Mr. Hollihan of the**
> **Medical Judgment of his Physicians**

Wexford's only defense to the claim of deliberate indifference is that this

case involves a purported disagreement with medical treatment.  Mot. at 5-7.

While courts have held that an inmate's disagreement with a doctor's choice of

medical treatment does not state an Eighth Amendment violation, this line of cases

is plainly inapplicable.  Mr. Hollihan does not disagree with the medical judgment

of his treating physicians, who have recommended cataract surgery since 2008;

rather, he disagrees with the administrative policy that served as an absolute bar to

receiving his prescribed treatment.  Furthermore, the fact that Mr. Hollihan was

provided with his prescribed cataract surgery in late February 2015, after the filing

of this lawsuit, leaves no doubt that it was medically appropriate.

Wexford's purported concern that its medical judgments be respected underscores the unconstitutionality of the "One Good Eye" policy. The "One Good Eye" policy interferes with the medical judgment of doctors by mandating the blanket denial of prescribed surgery. Here, at least three doctors recommended Mr. Hollihan's cataract surgery, but Wexford's enforcement of the "One Good Eye" policy caused Mr. Hollihan to languish with a hypermature cataract. Compl. ¶¶ 31, 34, 40, 48, 49. *See Colwell*, 763 F.3d at 1069 (rejecting the difference of opinion defense and finding that "[t]he record supports a conclusion that the specialists' recommendations for surgery were overridden not because of conflicting medical opinions about the proper course of treatment, but because officials enforced the 'one eye only' policy.").

Despite its contractual, constitutional, and ethical duty to provide medical services to inmates, Wexford callously asserts that Hollihan received adequate medical treatment given the cataract surgery for his right eye and "monitoring" of the cataract in his left eye. Mot. at 6-7. But, as a factual and legal matter, there is no legitimate "defense" of monitoring of the left eye. Cataracts are a degenerative disease and cannot be cured with non-surgical treatment. Compl. ¶¶ 25, 29. Passively observing a sick eye get worse and taking no action to correct it, as Mr. Hollihan's doctors did, is not medical treatment—it is deliberate indifference. *See Negron v. Bickell*, 2014 U.S. Dist. LEXIS 92363, at *16 (M.D. Pa. July 8, 2014);

-15-

*Royster v. Corizon*, 2014 U.S. Dist. LEXIS 56715, *13 (M.D. Pa Apr. 22, 2014)

("Deliberate indifference does not require a showing of complete failure to provide care, rather where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.") (citation omitted).

Furthermore, Wexford's support of a "one cataract surgery per inmate" quota, which condemns inmates to partial blindness, plainly offends evolving standards of decency.  Considering parallel facts, this Court held that an inmate who received cataract surgery in his right eye, but was refused a second cataract surgery for his left eye under "prison medical policies," had stated an Eighth Amendment claim.  *Boring*, 2013 U.S. Dist. LEXIS 114215, at *1-3, 17-18.  *See also Colwell*, 763 F.3d at 1068; *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003) ("[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose" runs afoul of the Eighth Amendment's prohibition of cruel and unusual punishment).

## II.   WEXFORD'S ENFORCEMENT OF THE "ONE GOOD EYE" POLICY UNDER COLOR OF STATE LAW STATES A CLAIM UNDER THE EIGHTH AMENDMENT

Defendant Wexford's assertion, without any supporting law, that it is somehow immune from liability because Mr. Hollihan has not alleged that it had

the authority to overrule the "One Good Eye" policy, is misplaced.  Mot. at 3-4.[8]

A private corporation such as Wexford "may be held liable for § 1983

constitutional violations if, while acting under color of state law, the corporation

knew of and acquiesced in the deprivation of a plaintiff's rights."  *Carter v. Pa.*

*Dep't of Corr.*, 2008 U.S. Dist. LEXIS 102016, at *22 (E.D. Pa. Dec. 17, 2008).

Where a corporation has instituted a "policy, practice or custom" that results in the

plaintiff's constitutional injury, the corporation can be liable.  *See id.*; *Natale v.*

*Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

This Court has found that Wexford "is considered to be acting under color of

law in accordance with *West* as Wexford is performing the DOC function of

providing medical services and the right in issue is the Eighth Amendment right to

be free from cruel  and unusual punishment."  *Scherer v. Pa. Dep't of Corr.*, 2007

U.S. Dist. LEXIS 84935, at *117-18 (W.D. Pa. Nov. 16, 2007); *see also West v.*

*Atkins*, 487 U.S. 42, 56 (1988).

Mr. Hollihan has clearly stated a claim because Wexford, as a matter of

official corporate policy, practice or custom, enforced the "One Good Eye" policy

under which the prescribed medical treatment of Mr. Hollihan and other putative

---

[8] Wexford has not moved on behalf of any individual defendants and lacks standing to seek the dismissal of any counts against Defendants Mahmud, Robinson, or Kern (including Counts III, IV, and V).  Mot. at 4.

class members was denied.  Compl. ¶¶ 20, 103.  *See Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989) (custom can be established by "proof of knowledge and acquiescence").  Indeed, Wexford's callous assertion that the 2001 cataract surgery in Mr. Hollihan's *right* eye obviated the need to remove a hypermature cataract in Mr. Hollihan's *left* eye leaves little doubt that Wexford adopted and applied the "One Good Eye" policy.  Mot. at 6.  And, as discussed above, the Wexford Employees carried out this corporate policy by denying Mr. Hollihan's prescribed cataract surgery due to the visual acuity in his right eye.

Contrary to Wexford's unfounded assertion, there is no immunity for private corporations that enforce unconstitutional policies.  Indeed, an unconstitutional policy or custom may exist if a private corporation "has failed to act affirmatively at all [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."  *Natale*, 318 F.3d at 584 (citation omitted).  Accordingly, even if Wexford's assertion is correct, it is still liable because it "turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights."  *Id.*

Moreover, whether or not Wexford had discretion to overrule the "One Good Eye" policy is a fact issue far outside the bounds of the Complaint.  Even

-18-

under Wexford's reasoning, Plaintiff is entitled to discovery to determine

Wexford's discretion to overrule the "One Good Eye" policy, the reason Wexford

denied Mr. Hollihan's cataract surgery, and Wexford's involvement in formulating

the policy.  The fact issues raised in Wexford's motion, to the extent they are of

any legal significance, support denial of the Motion and full discovery.  Therefore,

Mr. Hollihan has adequately stated an Eighth Amendment claim against Defendant

Wexford and its Motion should be denied.

## III.   PLAINTIFF HAS SUFFICIENTLY STATED CLASS ALLEGATIONS

### A.    Plaintiff Has Sufficiently Stated the Grounds for Certification of Rule 23(b)(2) Class

Shortly after filing the Complaint, Plaintiff moved for class certification.

Dkt. Nos. 2, 3.  Wexford failed to submit an opposition brief before its response

deadline and, instead, addresses class certification within its Motion to Dismiss.

Mot. at 7-10.  Wexford has not explicitly moved to dismiss the class allegations,

but, in any event, would clearly fail to satisfy its heavy burden.

Class allegations may be dismissed before discovery only in "the rare few

[cases] where the complaint itself demonstrates that the requirements for

maintaining a class action cannot be met."  *Goode v. LexisNexis Risk & Info.*

*Analytics Grp., Inc.*, 284 F.R.D, 238, 246 (E.D. Pa. 2012) (quoting *Landsman &*

*Funk P.C. v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011)).  Thus,

"[i]t is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Swank v. Wal-Mart Stores*, 2015 U.S. Dist. LEXIS 41789, at *7 (W.D. Pa. Mar. 31, 2015) (citation omitted).

The Complaint sets forth the class definition and describes, in great detail, how each element of Rules 23(a) and 23(b)(2) is satisfied. Compl. ¶¶ 81-89. Since Wexford does not, and cannot, argue that the Complaint itself forecloses class certification, Mr. Hollihan's class allegations must survive.

### B.    The Putative Class is "Cohesive"

Although the merits of class certification are not ripe for consideration here, Wexford's assertion that class certification should be denied because the class is not "cohesive" is, nonetheless, premised on its distortion of the Complaint and misapplication of the law. Wexford falsely characterizes the requested class-wide relief as seeking a "blanket ruling that all inmates who have cataracts can demand corrective surgery," taking "medical judgment out of the hands of the physicians and plac[ing] it in the hands of the inmates," and involving a "spectrum of factual scenarios and medical conditions" among inmates. Mot. at 8-9. Contrary to this contrived reading, in fact, the class is defined as:

> All persons who are currently incarcerated in a Pennsylvania Department of Corrections facility who have been diagnosed with a serious eye condition, which absent surgical intervention will cause

> serious visual impairment in the afflicted eye, and who have been
> refused necessary surgical treatment by the Pennsylvania Department
> of Corrections or its staff, pursuant to a policy or practice of denying
> surgery to inmates who have one better-seeing eye.

Compl. ¶ 82.  Likewise, the injunctive relief sought for identified class members is

"the provision of medically necessary and appropriate treatment, including

surgery" denied under the "One Good Eye" policy.  *Id.* at Relief Demanded ¶ 3.

The putative class members are not trying to dictate medical judgment to health

care providers, but rather to have health care providers' medical judgment applied,

instead of being constrained by a one-size-fits-all restriction on medically

prescribed surgery.

The class is plainly cohesive because all putative class members were denied

medically necessary surgery under the "One Good Eye" policy and injunctive

relief would inure to the benefit of all class members.  *See Wal-Mart Stores, Inc. v.

Dukes*, 131 S. Ct. 2541, 2557 (2011); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d

48, 58-59 (3d Cir. 1994) (Rule 23(b)(2) "is almost automatically satisfied"); *see,

e.g.*, *Clarke v. Lane*, 267 F.R.D. 180, 198 (E.D. Pa. 2010) (granting class

certification and noting that "Rule 23(b)(2) was created to deal with a case such as

this and, in seeking injunctive relief and declaratory judgment against the allegedly

violative healthcare system at Coleman Hall [prison]"); *Inmates of the

Northumberland County Prison v. Reish*, 2009 U.S. Dist. LEXIS 126479, at *76-

77 (M.D. Pa. Mar. 17, 2009) (finding that a class of inmates who challenged unconstitutional prison conditions was cohesive).

###### C.     The Court Should Disregard Wexford's Unsupported Exhaustion Argument

Wexford does not dispute that Mr. Hollihan has exhausted his administrative remedies, but instead groundlessly asserts unnamed class members must allege exhaustion "in order to bring suit."  Mot. at 9-10.  This is wrong as a matter of law. "Inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 212 (2007).  Instead, failure to exhaust administrative remedies is an affirmative defense, which must be pleaded and proved by Defendants.  *Id*.; *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.

Dated:   April 7, 2015

Respectfully submitted,

By:   /s/ *Thomas B. Schmidt III*
      Thomas B. Schmidt III

By:   /s/ *David Rudovsky*
      David Rudovsky

**PEPPER HAMILTON LLP**
Thomas B. Schmidt III (PA 19196)
100 Market Street
Suite 200
P.O. Box 1181
Harrisburg, PA 17108-1181
Tel:  (717) 255-1155
Fax:     (717) 238-0575
Email:   schmidtt@pepperlaw.com

**KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP**
David Rudovsky (PA 15168)
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
Tel:  (215) 925-4400
Fax: (215) 925-5365
Email:  drudovsky@krlawphila.com

**PEPPER HAMILTON LLP**
Eric Rothschild (PA 71746)
Eric Wolfish (PA 318399)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750
Email: rothsche@pepperlaw.com
         wolfishe@pepperlaw.com

**PENNSYLVANIA INSTITUTIONAL LAW PROJECT**
Angus Love  (PA 22392)
The Cast Iron Building
718 Arch Street, Suite 304 South
Philadelphia, PA 19106
Tel:  (215) 925-2966
Fax: (215) 925-5337
Email:  alove@pailp.org

Alexandra Morgan-Kurtz (PA 312631)
429 Forbes Ave, Ste 800
Pittsburgh, PA 15219
Tel: (412) 434-6175
Email: amorgan-kurtz@pailp.org

*Attorneys for Plaintiff Richard Hollihan*

## <u>WORD LIMIT CERTIFICATE</u>

Undersigned counsel for Plaintiff Richard Hollihan hereby certifies that the word count of the foregoing memorandum of law, excluding the cover, tables, and certificates, as determined by the Microsoft Word software with which it was produced, is 4,996 words.

Respectfully submitted,

By:   /s/ *Thomas B. Schmidt III*
        Thomas B. Schmidt III

**PEPPER HAMILTON LLP**
100 Market Street
Suite 200
P.O. Box 1181
Harrisburg, PA 17108-1181
Tel:  (717) 255-1155
Fax:  (717) 238-0575
Email:  schmidtt@pepperlaw.com

*Attorney for Plaintiff Richard Hollihan*

## <u>CERTIFICATE OF SERVICE</u>

Undersigned counsel for Plaintiff Richard Hollihan advises this Honorable Court that, on April 7, 2015, a true and correct copy of this Brief in Opposition to the Motion to Dismiss of Defendant Wexford Health Sources, Inc. was served via ECF on all counsel of record in this case.

Respectfully submitted,

By:   /s/ *Thomas B. Schmidt III*
      Thomas B. Schmidt III

**PEPPER HAMILTON LLP**
100 Market Street
Suite 200
P.O. Box 1181
Harrisburg, PA 17108-1181
Tel: (717) 255-1155
Fax: (717) 238-0575
Email: schmidtt@pepperlaw.com

*Attorney for Plaintiff Richard Hollihan*