**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD HOLLIHAN,**<br><br>**Plaintiff & Putative Class Representative**<br><br>**v.**<br><br>**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*,**<br><br>**Defendants** | : | **CIVIL ACTION NO. 3:15-CV-5**<br><br>**(Chief Judge Conner)** |

**MEMORANDUM**

The putative class action at bar challenges the confidential treatment regime of the Pennsylvania Department of Corrections ("Department") colloquially known as the "One Good Eye" policy. Culled to its essence, this administrative policy denies cataract surgery to inmates who retain a threshold modicum of visual acuity in one eye, notwithstanding physician recommendations to the contrary. The court finds that such draconian medical treatment, as unearthed in the complaint, may transgress the Eighth Amendment.

Plaintiff Richard Hollihan ("Hollihan") brings this litigation pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, Article I, § 13 of the Pennsylvania Constitution, PA. CONST. art. I, § 13, and 42 U.S.C. § 1983. (Doc. 1). Before the court are three motions (Docs. 17, 28, 42) to dismiss for failure to state a claim, filed by defendants Wexford Health Sources, Inc. ("Wexford"), Dr. Rashida Mahmud ("Dr. Mahmud"), Dr. John Robinson ("Dr. Robinson"), and Dr. Donald

Kern ("Dr. Kern"). Also pending is a motion (Doc. 60) for judgment on the pleadings filed by the Department, John Wetzel ("Wetzel"), and Bryan Hyde ("Hyde") (collectively, "Commonwealth defendants"). The motions will be granted in part and denied in part.

## I. Factual Background & Procedural History

Hollihan is an inmate at the State Correctional Institution in Somerset, Pennsylvania ("SCI Somerset"), where he has been incarcerated since 2001. (Doc. 1 ¶¶ 2, 38). Wexford is a private corporation, commissioned by the Department to provide medical care to inmates housed in state correctional facilities. (Id. ¶ 12). Wetzel serves as Secretary of the Department, and Hyde occupies the role of Correctional Health Care Administrator at SCI Somerset. (Id. ¶¶ 8-9). Dr. Mahmud is a physician at SCI Somerset, Dr. Robinson serves as Medical Director at SCI Somerset, and Dr. Kern is tasked with supervising the provision of health care to state inmates by Wexford employees. (Id. ¶¶ 10-11, 13). Drs. Mahmud, Robinson, and Kern are employed by Wexford. (Id. ¶ 13; Doc. 18 at 4; Doc. 50 at 3).

Hollihan has suffered from various eye and vision conditions since 1999. (Doc. 1 ¶ 37). He received cataract surgery on his right eye in 2001, while incarcerated in Pennsylvania. (Id. ¶ 39). Prior to 2008, Dr. Irwin, an optometrist at SCI Somerset, determined that Hollihan's left eye required cataract surgery, to which Hollihan consented. (Id. ¶ 40). The Department and its staff thereafter denied the recommended surgical procedure. (Id. ¶ 41). Hollihan appealed this determination to no avail, receiving the Department's conclusive denial in 2010. (Id. ¶ 42).

In February 2012, Dr. Mahmud and Dr. Shariat, an ophthalmologist at Somerset Hospital, examined Hollihan's eyes. (Id. ¶ 43). They diagnosed Hollihan's left eye with a "very ripe" cataract and measured his right eye visual acuity at 20/70. (Id.) Subsequent to a follow-up appointment in August 2012, Dr. Shariat requested that Dr. Mahmud arrange for cataract surgery to be performed on Hollihan's left eye. (Id. ¶ 48). Thereupon, Dr. Mahmud scheduled an operation for September 2012. (Id. ¶ 49). Dr. Mahmud subsequently postponed the procedure. (Id. ¶ 51). Hollihan thereafter filed a second administrative grievance seeking cataract surgery on his left eye. (Id. ¶ 52). In January 2013, the Department upheld Dr. Mahmud's decision to postpone, noting that Hollihan would receive the operation at a later date. (Id. ¶ 54).

Dr. Irwin performed an additional eye examination on Hollihan in May 2013; he diagnosed Hollihan's left eye with a "very dense cataract" and referred him to an ophthalmologist for surgery. (Id. ¶ 55). Contravening Dr. Irwin's referral, Dr. Mahmud scheduled Hollihan for a follow-up consultation three months later. (Id. ¶ 56). Dr. Mahmud explained that Hollihan was ineligible for cataract surgery on his left eye because the visual acuity in his right eye measured 20/60. (Id.) In response, Hollihan filed a "Request to Staff to the Medical Department" on June 10, 2013, wherein he sought permission to schedule the recommended operation with an ophthalmologist. (Id. ¶ 58). Hyde replied to Hollihan that the 20/60 vision in his right eye precluded this request. (Id. ¶ 59).

On December 19, 2013, a physician at SCI Somerset observed that Hollihan suffered from progressive vision loss and referred him to an ophthalmologist.

(Id. ¶ 62).  Shortly thereafter, both Dr. Robinson and Dr. Kern countermanded the physician's referral.  (Id. ¶¶ 63-64).  Dr. Kern cited the "good vision" in Hollihan's right eye as support for this disallowance.  (Id. ¶ 64).

Hollihan submitted a second "Request to Staff" in February 2014, seeking further information regarding his ineligibility for cataract surgery.  (Id. ¶ 65).  In riposte, Hyde explained that Hollihan "did not meet the criteria for cataract extraction."  (Id. ¶ 66).  Hollihan subsequently filed a third administrative grievance. (Id. ¶ 67).

The Department denied Hollihan's third petition, affirming its initial determination twice on appeal.  (Id. ¶¶ 68-70).  Each such adjudication referenced Department Policy 13.2.1, Section 16, Chapter 4, which prohibits cataract surgery for inmates who have "better than 20/50" corrected vision in one eye.  (Id.)  According to Hollihan, this provision is known colloquially among prison staff as the "One Good Eye" policy.  (Id. ¶ 71).

Throughout this period, the cataract in Hollihan's left eye led to multifarious difficulties.  Hollihan became virtually blind in his left eye, allegedly causing the vision in his right eye to deteriorate.  (Id. ¶¶ 73, 75).  The cataract also prevented treating physicians from examining his optic nerve and retina for disease.  (Id. ¶ 74). As a result of his deficient eyesight, Hollihan struggled to read, write, walk, and perform manual tasks.  (Id. ¶¶ 77-78).  He ultimately received cataract surgery on his left eye in February 2015.  (Doc. 23 at 9 n.6; Doc. 44).

Hollihan commenced the instant action on January 2, 2015.  (Doc. 1). Contemporaneously with the complaint, he filed a motion (Doc. 2) for class

certification.  The court denied Hollihan's motion without prejudice and directed the parties to engage in limited class discovery, which is ongoing *in praesenti*.  (Doc. 78). In the complaint, Hollihan first alleges that the Commonwealth defendants discriminated against him on the basis of disability in violation of the ADA (Count I), and that the Department discriminated against him on the basis of disability in violation of Section 504 (Count II).  (Doc. 1 ¶¶ 91-94).  Hollihan further asserts, pursuant to § 1983, that the following defendants violated his Eighth Amendment right to be free from cruel and unusual punishment: Dr. Robinson, Wetzel, and Hyde, in their official capacities (Count III); and Wexford, Dr. Mahmud, Dr. Robinson, Dr. Kern, and Hyde, in their individual capacities (Count V).  (Id. ¶¶ 95-96, 99-104).  Lastly, Hollihan claims that Wetzel, Hyde, and Dr. Robinson, acting in their official capacities, violated Pennsylvania's constitutional protections against cruel and unusual punishment (Count IV).  (Id. ¶¶ 97-98).  To rectify his alleged injuries, Hollihan seeks declaratory and injunctive relief; compensatory and punitive damages; and attorneys' fees and costs.  (Id. at 21-22).

In three separate motions (Docs. 17, 28, 42), Wexford, Drs. Mahmud and Robinson, and Dr. Kern seek dismissal of Hollihan's claims pursuant to Rule 12(b)(6).  Similarly, the Commonwealth defendants move (Doc. 60) for judgment on the pleadings under Rule 12(c).  The motions are fully briefed and ripe for disposition.

## II.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

A motion for judgment on the pleadings is the procedural hybrid of a motion to dismiss and a motion for summary judgment.  Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c). To succeed on a motion under Rule 12(c), the movant must clearly establish that no material issue of fact remains to be resolved and that "he is entitled to judgment as a matter of law."  Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005); see 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2015).  The Rule 12(c) motion is decided under the same standard applicable to a Rule 12(b)(6) motion to dismiss.  See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 251, but leave is broadly encouraged "when justice so requires."  FED. R. CIV. P. 15(a)(2).

## III.   Discussion

Defendants' motions *in extenso* test the sufficiency of all counts set forth in Hollihan's complaint.  As a threshold matter, defendants Wexford, Dr. Mahmud, Dr. Robinson, and Dr. Kern assert that Hollihan's request for injunctive relief is moot because he has received the surgery requested in the complaint.  (Doc. 44).

Further, defendants collectively contend that Hollihan's factual averments, even accepted as true, do not establish his entitlement to relief under the ADA (Count I); Section 504 (Count II); § 1983 and the Eighth Amendment (Counts III and V); and the Pennsylvania Constitution (Count IV). (Docs. 17-18, 28-29, 42, 50, 60, 64). Finally, the Commonwealth defendants aver that Hyde is exempt from liability under the doctrine of qualified immunity. (Doc. 64 at 8-11). The court will address these contentions *seriatim*.

**A. Injunctive Relief**

Article III, Section 2 of the United States Constitution confers upon the federal courts the power to adjudicate "Cases" and "Controversies." U.S. CONST. art. I, § 2. Absent the continuing existence of a live case or controversy, the court is without subject matter jurisdiction to proceed. See Am. Bird Conservancy v. Kempthorne, 559 F.3d 184, 188 (3d Cir. 2009). It is well-established that a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he seeks to challenge. See Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir. 1993); Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981).

In the case *sub judice*, Hollihan seeks "injunctive relief ordering cataract surgery . . . as well as any medically appropriate and necessary follow-up treatment." (Doc. 1 at 22). In February 2015, subsequent to commencing the instant action, Hollihan received cataract surgery on his left eye. (Doc. 23 at 9 n.6; Doc. 44). Defendants Wexford, Dr. Mahmud, Dr. Robinson, and Dr. Kern contend that Hollihan's request for injunctive relief is moot as a consequence. (Doc. 44). The court is compelled to agree.

In his opposition papers, Hollihan confirms that he no longer seeks cataract surgery. (See Doc. 23 at 9 n.6; Doc. 44 at 2). The complaint includes no factual allegations that Hollihan's need for cataract surgery, or the Department's denial thereafter, will recur. See Kempthorne, 559 F.3d at 188. Nor does the complaint assert that defendants have failed to provide medically appropriate care for Hollihan, separate and apart from the disputed surgical procedure. Consequently, the court is presently without jurisdiction to issue an injunction. See Abdul-Akbar, 4 F.3d at 206-07; Weaver, 650 F.2d at 27.

Hollihan seeks only injunctive relief in Count IV of the complaint, which asserts a claim against Wetzel, Hyde, and Dr. Robinson pursuant to Article I, § 13 of the Pennsylvania Constitution. PA. CONST. art. I, § 13; (see Doc. 1 ¶¶ 97-98; Doc. 71 at 19). Due to the change in Hollihan's circumstances, Count IV will be dismissed for lack of subject matter jurisdiction.

**B. Failure to State a Claim**

***1. ADA and Section 504***

Hollihan asserts two substantively equivalent disability discrimination claims: Count I against the Commonwealth defendants, pursuant to Title II of the ADA; and Count II against the Department, pursuant to Section 504. (Doc. 1 ¶¶ 91-94). The Commonwealth defendants concede that Hollihan "has sufficiently plead[ed] a claim under the ADA and [Section 504] that he has been denied access to services" at SCI Somerset. (Doc. 76 at 2 n.1). They aver, however, that Hollihan's disability discrimination claims concerning the Department's cataract policy must fail. (Doc. 64 at 5-8; Doc. 76 at 2 n.1).

To state a claim for disability discrimination under Title II of the ADA, Hollihan must allege that he: "(1) has a disability; (2) was otherwise qualified to participate in a [Department] program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of h[is] disability." Chambers *ex rel.* Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). The same standards govern claims pursuant to Section 504 of the Rehabilitation Act. Id.

In the complaint, Hollihan asserts that the Commonwealth defendants discriminated against him by categorically denying his requests for surgery under the Department's cataract policy. (Doc. 1 ¶¶ 76-79, 91-94). Hollihan further avers that the Department's denial caused him to be excluded from various programs and services at SCI Somerset because of his disability. (Id.) The court agrees with Hollihan and the Commonwealth defendants that the *allegata* in Counts I and II are sufficient to state a claim under the ADA and Section 504. (See Doc. 71 at 6-10; Doc. 76 at 2 n.1).

The Commonwealth defendants' remaining protestation misses the mark. (See Doc. 76 at 2 n.1). Neither Hollihan's averments regarding the Department's cataract policy nor those concerning his access to prison programs make out independent discrimination claims; rather, these factual assertions concomitantly support Hollihan's singular claim of disability discrimination under the ADA and Section 504. The Commonwealth defendants fail to provide any cogent explanation for their erroneous construction of Hollihan's pleading. The abovementioned

allegations are sufficient to survive the Commonwealth defendants' motion for judgment on the pleadings.

**2. *Section 1983***

Hollihan next alleges pursuant to § 1983 that the following defendants evinced deliberate indifference to his medical needs, in violation of the Eighth Amendment: Dr. Robinson, Wetzel, and Hyde, in their official capacities (Count III); and Wexford, Dr. Mahmud, Dr. Robinson, Dr. Kern, and Hyde, in their individual capacities (Count V). (Doc. 1 ¶¶ 95-96, 99-104). Certain of these defendants assert that Hollihan's § 1983 claims are factually insufficient to satisfy Rule 12(b)(6). (Docs. 17-18, 28-29, 42, 50). The court will first analyze Hollihan's official-capacity claims under principles of sovereign immunity. The court will then address the adjurations set forth in defendants' motions to dismiss.

**a. Sovereign Immunity**

The Eleventh Amendment precludes private federal litigation against a state and its agencies. U.S. CONST. amend. XI; see Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008). This jurisdictional bar applies to both agencies and officials thereof. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Hindes v. FDIC, 137 F.3d 148, 158 (3d Cir. 1998). As a state agency, the Department is immune from suit in federal court. See Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000).

Eleventh Amendment sovereign immunity is subject to three basic exceptions: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state

may waive its sovereign immunity by consenting to suit; or (3) under *Ex Parte* Young, 209 U.S. 123 (1908), a state official may be sued in his or her official capacity for prospective injunctive relief. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002); Hindes, 137 F.3d at 165-66. With respect to the first exception, it is well-settled that Congress had no intention to abrogate the states' sovereign immunity by enacting § 1983. Will, 491 U.S. at 66. Furthermore, Pennsylvania has unequivocally withheld its consent to such suits. Section 8521 of Title 42 of the Pennsylvania Code clearly states, "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment of the Constitution of the United States." 42 PA. CONS. STAT. § 8521(b); see Lombardo, 540 F.3d at 196 n.3.

Count III of the instant complaint levies allegations under § 1983 against Dr. Robinson, Wetzel, and Hyde, as official agents of the Department. (Doc. 1 ¶¶ 95-96). Such § 1983 official-capacity claims are only excepted from Eleventh Amendment sovereign immunity when a state official is sued for prospective injunctive relief. Hindes, 137 F.3d at 165-66 (citing *Ex Parte* Young, 209 U.S. 123); see Will, 491 U.S. at 71 n.10; McCauley v. Univ. of the V.I., 618 F.3d 232, 241 (3d Cir. 2010). As discussed *supra*, the fact of Hollihan's February 2015 cataract surgery moots his request for injunctive relief in this matter. Thus, no longer accompanied by a plea for injunctive relief, Hollihan's § 1983 official-capacity claims are barred by sovereign immunity. See Hindes, 137 F.3d at 165-66. Count III will be dismissed for lack of subject matter jurisdiction.

**b. Deliberate Indifference**

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under § 1983, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)); see West v. Atkins, 487 U.S. 42, 48 (1988).

The Eighth Amendment protects prison inmates from cruel and unusual punishment in the form of inadequate medical care. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). To set forth a cognizable claim, an inmate must allege (1) a serious medical need; and (2) acts or omissions by prison officials which demonstrate deliberate indifference to that need. See Estelle, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The "deliberate indifference" prong requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows

that the excessive risk was so obvious that the official must have known about it.

See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511

U.S. at 842).  The Third Circuit has found deliberate indifference when a prison

official knows of a prisoner's need for medical treatment and intentionally refuses

to provide it; delays necessary medical treatment for a non-medical reason; or

prevents a prisoner from receiving needed or recommended medical treatment.

Rouse, 182 F.3d at 197.

Defendants Wexford, Dr. Mahmud, Dr. Robinson, and Dr. Kern first argue

that Hollihan fails to state a claim of deliberate indifference against them because

he has not pled (1) that they have adopted the Department's cataract policy; or (2)

that they are empowered to overrule said policy.  (Doc. 18 at 3-4, Doc. 29 at 4-6; Doc.

50 at 4-5).  They cite no authority in support of their expostulation that averments of

this nature are essential to Hollihan's claims.  On this point, defendants are

mistaken.

At this stage of litigation, the court need only satisfy itself that, based on the

allegations set forth in the complaint, each moving defendant knew of and

disregarded an excessive risk to Hollihan's health.  See Farmer, 511 U.S. at 837.

Defendants do not dispute that Hollihan's cataract condition presented a serious

medical need.  (See Doc. 18 at 4-7; Doc. 29 at 6-9; Doc. 50 at 5-9).  Indeed, courts

addressing analogous factual circumstances have held that cataracts requiring

corrective surgery fall squarely within the ambit of Eighth Amendment protection.

See, e.g., Colwell v. Bannister, 763 F.3d 1060, 1067-68 (9th Cir. 2014); Boring v.

Sanders, No. 1:12-CV-419, 2013 WL 4080308, at *8 (M.D. Pa. Aug. 13, 2013);

Morris v. Corr. Med. Servs., Inc., No. 2:07-CV-10578, 2012 WL 5874477, at *3 (E.D.
Mich. Nov. 20, 2012).

With respect to deliberate indifference, Hollihan alleges that although
defendants knew that his physicians uniformly recommended cataract surgery on
his left eye, defendants nonetheless forestalled the procedure for six years based on
the Department's cataract policy.  Specifically, according to the complaint, Dr.
Mahmud scheduled the prescribed operation for September 2012, only to cancel it
shortly thereafter.  (Doc. 1 ¶¶ 49-51).  Dr. Mahmud also overrode Dr. Irwin's referral
for cataract surgery in May 2013.  (Id. ¶ 56).  Contradicting multiple doctors'
recommendations, Dr. Mahmud deemed Hollihan ineligible for cataract surgery
because the visual acuity in his right eye measured 20/60.  (Id.)  Drs. Robinson and
Kern similarly denied a prison physician's ophthalmology referral due to the "good
vision" in Hollihan's right eye.  (Id. ¶¶ 63-64).  Finally, Wexford may be held liable
for Drs. Mahmud, Robinson, and Kern's actions if it disregarded "an obviously
inadequate practice that was likely to result in the violation of constitutional rights."
Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).  Hollihan's
averments pellucidly support such a conclusion in light of these defendants'
aforementioned conduct.  In sum, Hollihan has satisfactorily pled that the moving
defendants exhibited deliberate indifference: to wit, by delaying necessary surgery
for a non-medical reason and by preventing Hollihan from receiving recommended
medical treatment.  See Rouse, 182 F.3d at 197.

Defendants Wexford, Dr. Mahmud, Dr. Robinson, and Dr. Kern further argue
that Hollihan's factual allegations merely proclaim disagreement as to the proper

course of treatment for his left eye, rather than stating a claim of deliberate indifference. (Doc. 18 at 4-7; Doc. 29 at 6-9; Doc. 50 at 5-9). Defendants misrepresent the provenance and substance of Hollihan's pleadings; according to Hollihan, defendants counterpoised his treating physicians' recommendations by enforcing the categorical dictates of the Department's cataract policy. Defendants' efforts to hypostatize the cataract policy do not undermine the sufficiency of Hollihan's averments.

The court concludes that Hollihan has adequately stated a claim of deliberate indifference against each moving defendant under § 1983. Count V of the complaint will thus withstand defendants' Rule 12(b)(6) challenges.

**C. Qualified Immunity**

Qualified immunity protects a state actor who has committed constitutional violations if the plaintiff's rights were not clearly established when the individual acted. Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable state actor could have believed that the challenged conduct infringed the plaintiff's constitutional rights. Id.; Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). The doctrine provides officials "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), and "ensure[s] that 'insubstantial claims against government officials will be resolved prior to discovery,' " Pearson, 555 U.S. at 231 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). The burden to establish qualified immunity rests with the defendant. Beers-Capitol, 256 F.3d at 142 n.15.

A court evaluating a claim of qualified immunity must consider two distinct questions: first, whether based on the facts alleged, a constitutional right has been violated; and second, if so, whether the right was "clearly established." Doe v. Groody, 361 F.3d 232, 237-38 (3d Cir. 2004) (citing Saucier v. Katz, 533 U.S. 194, 200-01 (2001)).  A right is clearly established if "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

The Commonwealth defendants seek judgment on qualified immunity grounds as to Hollihan's § 1983 claim against Hyde in his individual capacity. (Doc. 64 at 8-11; Doc. 76 at 3-5).  Hollihan argues that Hyde is not entitled to qualified immunity on the pleadings because, viewing the facts in the light most favorable to Hollihan, the complaint sufficiently alleges Hyde's deliberate indifference to Hollihan's medical needs.  (Doc. 71 at 16).  Hollihan submits that as a consequence of Hyde's indifference, Hyde is foreclosed from asserting that his conduct was objectively reasonable.  (Id.)  Hollihan is correct.

It is axiomatic that conduct which is deliberately indifferent under the Eighth Amendment is *a fortiori* unreasonable.  See Beers-Capitol, 256 F.3d at 142 n.15.  As the Third Circuit has explained, "[A] reasonable [official] . . . could not believe that her actions comported with clearly established law while also believing that there is an excessive risk to the plaintiff[] and failing to adequately respond to that risk." Id. For this reason, state actors who are the subject of well-pled claims of deliberate indifference cannot invoke qualified immunity at the Rule 12 stage of litigation.  See Carter v. City of Phila., 181 F.3d 339, 356 (3d Cir. 1999).

In the matter *sub judice*, Hollihan avers that Hyde twice denied Hollihan's requests for cataract surgery—citing Hollihan's 20/60 right eye visual acuity in the first instance, and explaining that Hollihan "did not meet the criteria for cataract extraction" in the second.  (Doc. 1 ¶¶ 59, 66).  As noted *supra*, Hollihan's averments describe conduct which is clearly proscribed by the Eighth Amendment: to wit, delaying necessary surgery for a non-medical reason.  See Rouse, 182 F.3d at 197. The court concludes that the complaint alleges behavior on the part of Hyde that, if true, may constitute deliberate indifference to Hollihan's need for cataract surgery. Thus, Hyde is not entitled to qualified immunity at this juncture.

## IV.   Conclusion

The motions (Docs. 17, 28, 42, 60) will be denied as to Counts I, II, and V and granted as to Counts III and IV.  The court will afford Hollihan twenty days to file a curative amended pleading which states a justiciable claim for injunctive relief.  An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       January 20, 2016